## WARD *v.* PERE MARQUETTE RAILWAY CO.

CARRIERS—DELIVERY WITHOUT SURRENDER OF BILL OF LADING—CONVERSION.

> Where, in an action against a railroad company for the conversion of a car load of lumber shipped by plaintiffs to themselves at the home of the purchaser, it appeared that the terminal carrier, without a surrender of the bill of lading, placed said car on a private siding, owned and exclusively used by the purchaser, thereby relinquishing all dominion over such shipment and placing it in the possession and exclusive control of the purchaser, such action amounted to a delivery and defendant is liable to plaintiffs for their resulting damage.[1]

Error to Mecosta; Brown (William B.), J., presiding.    Submitted January 20, 1925.    (Docket No. 44.)    Decided June 18, 1925.

---

[1] Carriers, 10 C. J. §§ 364, 370.

Case by Hamlin J. Ward and others, copartners as Ward Brothers, against the Pere Marquette Railway Company for the conversion of a car load of lumber. Judgment for plaintiffs.    Defendant brings error. Affirmed.

*Norris, McPherson, Harrington & Waer (Williams, Shields & Seaton,* of counsel), for appellant.

*Francis L. Williams,* for appellees.

McDONALD, C. J.    This action is brought to recover the value of a car load of hardwood flooring which it is claimed the defendant converted by unauthorized delivery.    The plaintiffs are lumber dealers at Big Rapids, Michigan.    On July 22, 1920, they shipped one car of No. 1 grade maple flooring via the Pere Marquette Railway Company and connecting carriers to the order of themselves, under the name of Ward Brothers, at Brockton, Massachusetts, "Notify Taunton Lumber Company, Brockton, Mass."    The order bill of lading with draft attached for $3,927.04 was sent to the Fidelity Trust Company of Boston, the shipment having been made on an order from Albert C. Place, a lumber broker of Boston, for the Taunton Lumber Company. The car arrived at Brockton on August 21st, and was placed on the storage tracks of the terminal carrier where it remained until August 25th, when it was transferred to a private side track of the Taunton Lumber Company without a surrender of the bill of lading.    The foreman of the lumber company broke the seals of the car, unloaded about 4,000 feet of lumber and removed it to the warehouse of the Taunton Lumber Company where it was inspected and afterwards returned to the car.    No notice of rejection was given to the railway company or to the plaintiffs, and no further attention was paid to the car by the lumber company.    It remained upon its

private track until about September 8th.   In the meantime the draft not having been paid and having no information as to the whereabouts of the car, the plaintiffs sent their agent, Mr. Bugai, to Brockton to investigate.   He found that the lumber had been rejected by the Taunton Lumber Company; that the car still stood on its private track with the doors open; and that some of the flooring had been damaged by rain.   He stated the facts as he had found them to the railroad company, and was requested to dispose of the lumber to the best advantage, leaving the matter of loss adjustment for further consideration. Accordingly, the car was forwarded to Boston where it was subsequently sold for much less than the original invoice price.   The action for conversion is based upon the claim that on the 25th day of August, 1920, the railroad company delivered the car of lumber to the Taunton Lumber Company without a surrender of the bill of lading.   The defendant denies a delivery.   The case was tried by the court without a jury.   Findings of fact and of law were filed.   Defendant proposed amendments which were denied and exceptions thereto duly taken.   Judgment was entered for the plaintiffs in the sum of $2,890.42.   The defendant brings error.

The material facts are not disputed.   The question presented is solely one of law.   If the defendant is to be held for conversion it is because the destination carrier delivered this car load of lumber to the Taunton Lumber Company without a surrender of the bill of lading.   That the bill of lading was not surrendered is undisputed.   Therefore, the only question is whether there was a delivery.   It is the custom of the railroad company at Brockton, in handling shipments of this kind, to place the car on its hold or storage tracks and keep possession of it until the bill of lading is surrendered.   When that is done

the car is switched to the private siding of the Taunton Lumber Company. This siding is owned and exclusively used by the Taunton Lumber Company. It was not used by the railroad company either for necessity or convenience. It was the only place where the railroad made all deliveries to the lumber company. The railroad company understood that when a car was placed upon that siding its shipment was terminated. It had no further dominion over it. From that time the Taunton Lumber Company had complete and exclusive possession of the car and could break the seals and unload the contents. Mr. Hanscom, the chief clerk in the Brockton freight office, testified:

"*Q.* The car is delivered when placed on that siding, isn't it?
"*A.* Ordinarily."
"*Q.* An order notify car, when it is placed, is delivered and the consignee has the right to break the seals and do as he sees fit?
"*A.* If placed on his track, yes."

When the car in question arrived it was placed in the railroad yard on storage track No. 9, a track inaccessible for delivery purposes. It remained there for several days when, at the request of the Taunton Lumber Company, it was switched onto its private siding without the surrender of the bill of lading. After it went upon this siding, the railroad company had no control of the car. It had no right to go upon the siding, except to check the car for the purpose of charging demurrage against it. By this act of placing the car upon the private siding, it gave up possession and all dominion over the car. There was nothing more it could do to complete the shipment. As stated by the trial court:

"There was no further or different manual or physical act to be done by the carrier in addition to what it did do in order to deliver this car to the

Taunton Lumber Company and to give the lumber company dominion over this car of lumber.   Had the draft been paid and the bill of lading presented to the carrier, it would have moved and placed the car just as it was done.   *   *   *

"As between the railroad company and the Taunton Lumber Company, the understanding and custom is that a car is delivered by the railroad company to the Taunton Lumber Company when it is placed by the railroad company upon this private siding of the Taunton Lumber Company.

"By reason of the doors of the car being left open, the lumber in the car was damaged in a substantial sum and amount by being exposed to the weather and by being wet and rained upon."   *   *   *

On the question of delivery the controlling facts in this case are that the carrier placed the car of lumber on a private siding owned and exclusively used by the Taunton Lumber Company; that this siding was the usual and customary place where shipments were delivered to the lumber company; that the railroad company relinquished all dominion over the shipment, and placed it in the possession and in the exclusive control of the lumber company; and that while in possession of the lumber company the shipment was injured.   These facts constitute a complete delivery of the car of lumber to the Taunton Lumber Company, and consequently a conversion of the plaintiffs' property.

It has been suggested that there could be no conversion because delivery could not legally be made without a surrender of the bill of lading.   The delivery was legal, but wrongful, because it was unauthorized.   The circuit judge correctly determined the issue.

The judgment entered is affirmed, with costs to the plaintiffs.

CLARK, BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.